UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| KEITH A. ROWLEY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CASE NO.: 1:12-cv-01125-DML-LJM |
| | ) |
| CAROLYN W. COLVIN, Acting | ) |
| Commissioner of the Social Security, | ) |
| Administration, | ) |
| | ) |
| Defendant. | ) |

## Decision on Judicial Review

Plaintiff Keith A. Rowley applied in July 2009 for Disability Insurance Benefits (DIB) and Supplemental Security Income disability benefits (SSI) under Titles II and XVI, respectively, of the Social Security Act, alleging that he has been disabled since April 27, 2008. Acting for the Commissioner of the Social Security Administration following a hearing on January 18, 2011, an administrative law judge ("ALJ") found that Mr. Rowley is not disabled. The national Appeals Council denied review of the ALJ's decision on June 28, 2012, rendering the ALJ's decision for the Commissioner final. Mr. Rowley timely filed this civil action under 42 U.S.C. § 405(g) for review of the Commissioner's decision. The parties consented to the magistrate judge conducting all proceedings and ordering the entry of judgment in accordance with 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73.

Mr. Rowley contends that the ALJ erroneously evaluated the severity of his back and neck impairments and the pain he suffers from them, and erroneously

discounted the opinion of his treating physician that Mr. Rowley cannot stand and walk more than one to three hours in a work day. Contrary to that opinion, the ALJ determined that Mr. Rowley is capable of standing and walking for six hours in an eight hour work day. As addressed below, the court finds that the ALJ's rejection of the opinion of Mr. Rowley's treating physician is not supported by substantial evidence and that his negative credibility determination is flawed as a whole. For these reasons, the Commissioner's decision is REVERSED and REMANDED.

## Standard for Proving Disability

To prove disability, a claimant must show that he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A) (DIB benefits); 42 U.S.C. § 1382c(a)(3)(A) (SSI benefits).[1] Mr. Rowley is disabled if his impairments are of such severity that he is not able to perform the work he previously engaged in and, if based on his age, education, and work experience, he cannot engage in any other kind of substantial gainful work that exists in significant numbers in the national economy. 42 U.S.C. § 423(d)(2)(A). The Social Security Administration ("SSA") has implemented these

---

[1] Two programs of disability benefits are available under the Social Security Act: DIB under Title II for persons who have achieved insured status through employment and withheld premiums, 42 U.S.C. § 423 *et seq.*, and SSI disability benefits under Title XVI for uninsured individuals who meet income and resources criteria., 42 U.S.C. § 1381 *et seq.* The court's citations to the Social Security Act and regulations promulgated by the Social Security Administration are those applicable to DIB benefits. For SSI benefits, material identical provisions appear in Title XVI and at 20 C.F.R. § 416.901 *et seq.*

statutory standards by, in part, prescribing a five-step sequential evaluation process for determining disability. 20 C.F.R. § 404.1520.

Step one asks if the claimant is currently engaged in substantial gainful activity; if he is, then he is not disabled. Step two asks whether the claimant's impairments, singly or in combination, are severe; if they are not, then he is not disabled. A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). The third step is an analysis of whether the claimant's impairments, either singly or in combination, meet or medically equal the criteria of any of the conditions in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. The Listing of Impairments includes medical conditions defined by criteria that the SSA has pre-determined are disabling, so that if a claimant meets all of the criteria for a listed impairment or presents medical findings equal in severity to all the criteria for the most similar listed impairment, then the claimant is presumptively disabled and qualifies for benefits. *Sims v. Barnhart,* 309 F.3d 424, 428 (7th Cir. 2002).

If the claimant's impairments do not satisfy a listing, then his residual functional capacity (RFC) is determined for purposes of steps four and five. RFC is a claimant's ability to do work on a regular and continuing basis despite his impairment-related physical and mental limitations. 20 C.F.R. § 404.1545. At the fourth step, if the claimant has the RFC to perform his past relevant work, then he is not disabled. The fifth step asks whether there is work in the relevant economy

that the claimant can perform, based on his age, work experience, and education (which are not considered at step four), and his RFC; if so, then he is not disabled.

The individual claiming disability bears the burden of proof at steps one through four.  *Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987).  If the claimant meets that burden, then the Commissioner has the burden at step five to show that work exists in significant numbers in the national economy that the claimant can perform, given his age, education, work experience, and functional capacity.  20 C.F.R. § 404.1560(c)(2); *Young v. Barnhart,* 362 F.3d 995, 1000 (7th Cir. 2004).

## Standard for Review of the ALJ's Decision

Judicial review of the Commissioner's (or ALJ's) factual findings is deferential.  A court must affirm if no error of law occurred and if the findings are supported by substantial evidence.  *Dixon v. Massanari,* 270 F.3d 1171, 1176 (7th Cir. 2001).  Substantial evidence means evidence that a reasonable person would accept as adequate to support a conclusion.  *Id.*  The standard demands more than a scintilla of evidentiary support, but does not demand a preponderance of the evidence.  *Wood v. Thompson,* 246 F.3d 1026, 1029 (7th Cir. 2001).

The ALJ is required to articulate a minimal, but legitimate, justification for his decision to accept or reject specific evidence of a disability.  *Scheck v. Barnhart,* 357 F.3d 697, 700 (7th Cir. 2004).  The ALJ need not address every piece of evidence in his decision, but he cannot ignore a line of evidence that undermines the conclusions he made, and he must trace the path of his reasoning and connect the

evidence to his findings and conclusions. *Arnett v. Astrue,* 676 F.3d 586, 592 (7th Cir. 2012); *Clifford v. Apfel,* 227 F.3d 863, 872 (7th Cir. 2000).

## Analysis

Because Mr. Rowley's complaints of debilitating back pain, which are supported by the medical evidence and the opinion of his treating physician, were rejected by the ALJ on grounds without reasoned support, the court finds that the Commissioner's decision must be reversed and remanded.

### A.     The Treating Physician Rule

The weight that an ALJ gives to medical opinions is guided by factors described in 20 C.F.R. § 404.1527(b)(2). A medical opinion by a treating physician or other acceptable treating medical source about the nature and severity of a claimant's impairments, including any mental and physical restrictions, is entitled to "controlling weight" if it is well-supported by medically acceptable techniques and is not inconsistent with other substantial evidence. *Id.* § 404.1527(d)(2). *Johansen v. Barnhart,* 314 F.3d 283, 287 (7th Cir. 2002) ("[T]reating physician's opinion is entitled to controlling weight only if it is not inconsistent with other substantial evidence in the record.").

Mr. Rowley complained of low back pain when he first saw Dr. Christopher Steinmetz in August 2008. He next saw Dr. Steinmetz in January 2010, complaining that his back problems had worsened and that he could not stand for prolonged periods without his legs giving out. (In the period between visits to Dr. Steinmetz, Mr. Rowley was being treated for hernias on both sides, had one surgical

hernia repair, and was recommended to undergo a second one.)  In March 2010, Mr. Rowley had an MRI that showed he had significant stenosis at the focal level at L4-5, and chronic, right-sided C5 or C6 radiculopathy, which was causing pain and problems with right upper extremity strength and grip.  The neurologist recommended that Mr. Rowley attend physical therapy and that he undergo right ulnar decompression surgery.  Mr. Rowley agreed to have surgery, but it was postponed after a scheduling conflict.  Dr. Steinmetz provided a letter dated November 15, 2010, stating his opinion that Mr. Rowley's back problems and his inability to engage in prolonged standing are traceable to his severe lumbar spinal stenosis, as evidenced by his MRI.  He stated that Mr. Rowley is  being considered for a L4-5 laminectomy, but that even with back surgery, Mr. Rowley's "condition is unlikely to improve his pain enough to allow him to return to his usual occupations," which were as a cook and a janitor and required prolonged standing.  (R. 300).

After the administrative hearing, the ALJ sent a questionnaire to Dr. Steinmetz and requested him to provide more information to support his opinions regarding Mr. Rowley's functional abilities, including  standing and walking.  The ALJ also asked Dr. Steinmetz to comment whether Mr. Rowley's regular alcohol, marijuana, and tobacco intake are material factors contributing to his restricted physical functioning.  Dr. Steinmetz responded that Mr. Rowley's back pain, consistent with the medical evidence, is material to his restricted functioning and that the alcohol, marijuana, and tobacco have nothing to do with it.  He stated that

6

Mr. Rowley's complaints of pain from standing more than 15 to 20 minutes at a time are symptoms consistent with his severe lumbar stenosis and that, although he had not conducted tests of Mr. Rowley's standing thresholds despite the pain, Mr. Rowley takes Vicodin pain medication three times per day.  (R. 351).  Dr. Steinmetz also referred the ALJ to two medical records – the lumbar MRI dated May 12, 2010, and a cervical MRI dated February 10, 2011—as supporting his opinion regarding Mr. Rowley's functional capacity, including his opinion that Mr. Rowley cannot stand more than 1-3 hours in an 8 hour work day.

      The ALJ rejected Dr. Steinmetz's opinion that Mr. Rowley cannot stand more than 20 minutes at a time and no more than 1-3 hours in a workday, and instead determined that Mr. Rowley is capable of standing for six hours in a workday.  The ALJ's grounds for rejecting Dr. Steinmetz's opinion were that (1) Dr. Steinmetz's "own treatment records fail to support his opinion"; (2) Dr. Steinmetz "did not have the benefit of viewing the other medical evidence of record"; and (3) Dr. Steinmetz had not "observed testing of the claimant's actual functional limitations."  The first two grounds are puzzling.  The ALJ did not cite to any particular treatment records or other medical evidence in the record that do not support or are otherwise inconsistent with Dr. Steinmetz's views.  Dr. Steinmetz believed his own evaluation and treatment of Mr. Rowley, including the two MRIs from 2010 and 2011, supported the limitations on Mr. Rowley's standing abilities, and the ALJ did not cite to any particular treatment records or other medical evidence inconsistent with Dr. Steinmetz's opinion.  In fact, as the ALJ acknowledged in other sections of his

7

opinion, the medical evidence reflected a worsening of Mr. Rowley's back problems from 2008 when he first saw Dr. Steinmetz to 2010 when an x-ray and later an MRI were ordered. The May 2010 MRI revealed that despite a January 2010 x-ray revealing only slight scoliosis, Mr. Rowley had severe central canal stenosis at L4-5 and by January 2011, it remained Dr. Steinmetz's opinion that Mr. Rowley's back condition was consistent with pain symptoms that would prevent Mr. Rowley from standing more than three hours in a work day.

The ALJ's decision does not make clear the source of the "other medical evidence of record" he found inconsistent with Dr. Steinmetz's view. Assuming that he was referring to an evaluation prepared by an agency physician based on a one-time consultative physical examination, the ALJ himself rejected that evaluation because it was based on a September 2009 examination and pre-dated the medical evidence that supported Mr. Rowley's complaints of severe back pain and difficulty standing for prolonged periods because of the back pain. Indeed, as of September 2009, the state agency's medical consultant found that Mr. Rowley did not suffer from *any* severe physical impairments because there was *no* medical evidence of any back-related impairments and his hernia problems had been surgically repaired.

Although Dr. Steinmetz's functional capacity opinion was not based on "observed testing," which Dr. Steinmetz thought should be done by persons who specialize in testing for functional capacity, his opinion is the only functional capacity evaluation provided by any medical source, and the only one that considered the evidence of Mr. Rowley's degenerative back disease. No agency

8

doctor or anyone else provided a functional capacity evaluation contradicting Dr. Steinmetz's findings. With that absence, along with the ALJ's other strained grounds for rejecting Dr. Steinmetz's opinion and a suspect credibility determination (discussed below), there is a lack of reasoned support for the ALJ's decision that Mr. Rowley is capable of standing and walking for six hours every work day—twice as long as the most Dr. Steinmetz believed he can do.

### B. The Credibility Assessment

An ALJ is required to consider a claimant's statements about his symptoms and how they affect his daily life and ability to work, 20 C.F.R. § 404.1529(a), but he is not required to accept the claimant's statements blindly. *Rucker v. Chater,* 92 F.3d 492, 496 (7th Cir. 1996). Because the ALJ evaluates credibility by questioning and evaluating a live witness, the ALJ's credibility finding is reviewed deferentially and will not be set aside unless it is "patently wrong." *Craft v. Astrue,* 539 F.3d 668, 678 (7th Cir. 2008); *Luna v. Shalala,* 22 F.3d 687, 690 (7th Cir. 1994).

The ALJ's credibility assessment is rife with boilerplate, is grounded in some matters that are without support, and fails to acknowledge that the intensity of Mr. Rowley's back pain symptoms are supported by the medical evidence and the opinion of his treating physician. These flaws—combined with the ALJ's strained evaluation of Dr. Steinmetz's opinion—convince the court that the failures in the credibility assessment support remand.

First, the ALJ used the oft-repeated, and always illogical, boilerplate that he determined Mr. Rowley's work capacity and then rejected as not credible any

9

statement by Mr. Rowley that was inconsistent with that work capacity.  That is a backwards analysis because the ALJ must first decide the extent to which Mr. Rowley's statements about his pain and their limiting effects are believable and then must incorporate *into* the RFC the limitations that the ALJ believes.  *See Filus v. Astrue,* 694 F.3d 863, 868 (7th Cir. 2012).  The use of this boilerplate is not itself grounds for remand so long as the decision otherwise reflects an appropriate assessment of the claimant's credibility, *id.,* but in this case the credibility analysis has other significant defects.

Second, the ALJ gave two reasons for finding that Mr. Rowley's daily living activities were inconsistent with his pain complaints from back problems, but neither one provides a rational basis for disbelieving Mr. Rowley.  The first reason—that Mr. Rowley's activities "cannot be objectively verified with any reasonable degree of certainty"—is not a reason to doubt Mr. Rowley, and it too is boilerplate that the court has seen before.  The ALJ did not cite to any inconsistencies among various statements Mr. Rowley made about his daily activities, and there is nothing internally inconsistent about Mr. Rowley's description of his daily activities and the pain he says he feels.  A claimant is not required to provide "objective verification"—such as a "day in the life" video—to prove that what he says about the way he spends his days and the activities he engages are true.  The ALJ's second reason is also boilerplate that evidences no meaningful consideration.  The ALJ found that Mr. Rowley's limited daily activities must be attributable to something other than his medical condition "in view of the

relatively weak medical evidence and other factors discussed in this decision." (R. 23).  It is not at all clear what the "other factors" are or what medical evidence has been deemed "relatively weak."  According to the treating physician, Mr. Rowley's back pain and its limiting features are fully supported by the medical evidence, including diagnostic studies in 2010 and 2011.

The ALJ also cited Mr. Rowley's alcohol intake and marijuana use as part of his credibility analysis, but stated that the alcohol and drugs made Mr. Rowley's *mental* incapacities less likely traceable to a medical reason than to polysubstance abuse.  He did not suggest that Mr. Rowley's back pain and difficulties with prolonged standing are less believable because Mr. Rowley drinks alcohol and smokes marijuana.  Dr. Steinmetz advised the ALJ that Mr. Rowley's alcohol and marijuana use do not detract from his real back problems and pain symptoms, a matter that the ALJ did not question.  The ALJ also did not suggest that Mr. Rowley abuses prescribed pain medications or that the medications compromise the credibility of his symptoms.  And, again, Dr. Steinmetz advised the ALJ that Mr. Rowley has been prescribed and takes narcotic pain medication three times per day *because* of his pain symptoms.

The only other reason the ALJ gave to support his assessment that Mr. Rowley is capable of standing for six hours a day rather than three hours at most was that Mr. Rowley was advised to "consult with physical therapy" but had not done so.  Failing to comply with recommended treatment is a good reason to question the severity of a claimant's symptoms, but in this case, the ALJ did not ask

11

Mr. Rowley why he had not made an appointment to undergo physical therapy. As the only substantial ground provided by the ALJ for doubting Mr. Rowley's credibility on the limiting effects of his back pain symptoms, it was incumbent upon the ALJ to ask why rather than interpreting a silent record so harshly against him.

## Conclusion

For the foregoing reasons, the Commissioner's decision is REVERSED and REMANDED. Because the medical evidence regarding Mr. Rowley's back impairments—including the 2010 and 2011 MRIs—were never reviewed and evaluated by agency physicians, the ALJ may determine on remand that it is appropriate to reopen the record and obtain additional evidence regarding Mr. Rowley's lumbar and cervical impairments and his physical capacities.

So ORDERED.

Date: 09/27/2013

Debra McVicker Lynch
United States Magistrate Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record via email generated by the court's ECF system